JUSTICE McKINNON,
specially concurring.
¶25 The prevailing party in a civil action against a state agency is entitled to reasonable attorneys’ fees only if the court finds that “the claim or defense of the ... agency that brought or defended the action was frivolous or defended in badfaith.”Section 25-10-711, MCA. Based on the language of § 25-10-711, MCA, a determination that the DNRC did not act in bad faith or defend this litigation frivolously is dispositive and precludes an award of attorneys’ fees against the DNRC. In contrast, whether the DNRC acted in bad faith is only one of several factors to be considered in determining if the circumstances support an award of fees pursuant to the private attorney general doctrine, an equitable exception to the American Rule. The Court’s analysis, therefore, must necessarily include consideration of § 25-10-711, MCA. Consistent with our precedent, we recently employed such an analytical framework in Mont. Immigrant Justice Alliance v. Bullock, 2016 MT 104, 383 Mont. 318, 371 P.3d 430. I would do so as well here. If the DNRC pursued its defense of the 1993 Rule in good faith, then such a determination is conclusive and attorney fees may not be assessed against the agency. As the District Court failed to *214 address § 25-10-711, MCA, its conclusions of law were incorrect. Further, based upon the procedural history of this litigation, any determination by the District Court that it was “just” to assess attorney fees against the DNRC because it “failed to promulgate a valid rule” was an abuse of discretion.
¶26 In Mont. Immigrant Justice Alliance, we considered a challenge to Legislative Referendum 121 (LR 121), which denied certain state services to individuals defined by the law to be “illegal aliens.” Montana Immigrant Justice Alliance (MIJA) requested attorneys’ fees pursuant to the private attorney general doctrine. We applied the provisions of § 25-10-711(1)(b), MCA, explaining that attorney fees are recoverable against the state only if the state’s claims or defenses were frivolous or pursued in bad faith. “A claim or defense is frivolous or in bad faith when it is outside the bounds of legitimate argument on a substantial issue on which there is a bona fide difference of opinion.” Mont. Immigrant Justice Alliance, ¶ 48, citing W. Tradition P’ship, ¶ 10. We held that the Attorney General was defending, as his duty required, an enactment passed by 80 percent of the voting citizens of Montana and that the topic was important to a large number of Montanans. Observing that there were bona fide differences of opinion, we concluded that the State’s defense of LR 121 “was not frivolous or in bad faith.” Mont. Immigrant Justice Alliance, ¶ 49. We held that MIJA’s claim for attorneys’ fees pursuant to the private attorney general doctrine was not allowed under § 25-10-711(1)(b), MCA. Mont. Immigrant Justice Alliance, ¶ 49.
¶27 Similarly, in Ostergren v. Dept. of Rev., 2004 MT 30, 319 Mont. 405, 85 P.3d 738, we concluded that although the taxpayer prevailed against the Department of Revenue (DOR) in that its property was valued in accordance with taxpayer’s arguments, as opposed to DOR, the taxpayer was not entitled to fees if the DOR’s claim did not rise to “the level of frivolity or bad faith.” Ostergren, ¶ 24. The 1997 Montana Legislature passed Senate Bill 195 which required reappraisals of class three, four, and ten properties statewide and caused significant market value increases. The taxpayer asserted DOR willfully mishandled the property assessment statute, acted in bad faith in refusing to refund taxes, and DOR had ignored 1996 values in its reappraisals. We determined that there was a disagreement on the valuation of property and that the appeals process is available for such situations. “Simply because a taxpayer does not agree with the DOR’s valuation of property does not entitle a taxpayer to attorney fees and costs.” Ostergren, ¶ 25. See also Dearborn Drainage Area, 240 Mont. at 43, 782 P.2d at 900 (the Department of Fish, Wildlife and Parks “acted in good *215 faith and in accordance with constitutional and statutory mandates” in representing the public’s recreational use rights in the waters of Bean Lake); W. Tradition P’ship, ¶ 20 (“While the Attorney General did not prevail, it is difficult to conclude that his arguments were frivolous
¶28 Although both the language of § 25-10-711, MCA, and our precedent applying it are clear, this Court, by failing to mention § 25-10-711, MCA, appears to have accepted the Coalition’s argument that § 25-10-711, MCA, is a statute-based fee provision which is not at issue in this case. The Coalition maintains that they are not seeking reimbursement for attorneys’ fees pursuant to § 25-10-711, MCA, but rather are pursuing attorneys’ fees under the four factor test of the private attorney general doctrine which, the Coalition argues, “provides its own, independent basis for an award of attorneys’ fees separate from § 25-10-711, MCA.” The Coalition ignores that “[t]he statutes establish the law of this state respecting the subjects to which they relate, and their provisions and all proceedings under them are to be liberally construed ....” Section 1-2-103, MCA. Section 25-10-711(l)(b), MCA, specifically declares that an agency of the state may only be required to pay costs if the agency has brought or defended an action which was frivolous or pursued in bad faith.[1]
¶29 I would construe § 25-10-711, MCA, and the private attorney general doctrine consistently, as we attempted to do in W. Traditions P’ship. Whether an agency acted frivolously or in bad faith are guideposts within which to assess—under the particular facts, procedural history, and relevant principles of law of the case—whether an award of attorneys’ fees under the private attorney general doctrine is equitable and consistent with §25-10-711, MCA. W. Traditions P’ship, ¶ 18. Accordingly, the “frivolous or in bad faith” standard set forth in § 25-10-711, MCA, may not be ignored when the action is against the state or an agency of the state, regardless of what equitable theory the prevailing party chooses to advance. The private attorney general doctrine must be consistent with the legislature’s determination of the standard to be employed when a state agency is *216 a party.
¶30 In these proceedings, the procedural history is significant in assessing the DNRC’s actions in the context of the private attorney general doctrine and § 25-10-711, MCA. Sixteen years after the adoption of the 1993 Rule, the Coalition filed a Petition for Declaratory Ruling and requested the DNRC declare the 1993 Rule invalid because it was inconsistent with the Montana Water Use Act. The DNRC determined that the Petition presented a controversy of statewide importance and appointed a hearing examiner. Interested persons were provided an opportunity to file statements of position and briefs. Following a public hearing, the DNRC’s hearing examiner issued his Declaratory Ruling on August 17, 2010, concluding the 1993 Rule was consistent with the plain language of § 85-2-306, (3), MCA. However, the hearing examiner determined that the 1993 Rule defining “combined appropriation” was not the best definition that could be provided and consequently committed the DNRC to redefine the term through rulemaking.
¶31 In September 2010, the Coalition filed the instant Petition for Judicial Review. In November, the parties signed a stipulated agreement to revise the definition of combined appropriation and acknowledged that the Coalition would participate in rulemaking. The stipulation also provided that if the term “combined appropriation” was defined by the 62nd Legislature, the DNRC’s rulemaking efforts would cease. The 62nd Legislature passed House Bill 602, which authorized a formal study of exempt wells by the Water Policy Interim Committee (WPIC) and prohibited DNRC rulemaking until after October 1, 2012. As a result, the parties entered into a modified agreement which extended timelines and rulemaking to July 2013.
¶32 In response to the 2012 WPIC Report, the 63rd Legislature passed two bills in 2013: Senate Bill 19, which essentially codified the 1993 Rule, and Senate Bill 346, which authorized a stream depletion zone in areas where modeling demonstrated that exempt wells were having an impact on senior water users. Governor Bullock vetoed Senate Bill 19 and it did not become law. The DNRC next provided notice in August 2013 of a proposed rule revising the definition of combined appropriation. A public hearing was scheduled for September 2013. The WPIC submitted a letter of objection to the DNRC’s proposed rule asserting that it was inconsistent with its 2012 Report and the legislature’s intent. The Environmental Quality Council (EQC) also filed a formal objection to the DNRC’s proposed rule. Pursuant to §§ 2-4-305(6) and 75-1-324(10), MCA, an objection by EQC delays effectiveness of the rule until after final adjournment of the next *217 regularly scheduled session. Accordingly, the DNRC withdrew the proposed rule following the public hearing in September.
¶33 In December 2013, the DNRC published notice of a second proposed rule. Again, the WPIC and EQC objected to the proposed rule. In response, the DNRC withdrew its second proposed rule and, recognizing that judicial review was the only way to resolve the controversy between the 1993 Rule and its impact on senior water rights, proceeded with the Coalition to reopen the Petition. During this entire period, the hearing examiner’s determination that the 1993 Rule was consistent with § 85-2-306(3), MCA, remained valid. It was not until October 17, 2014, when the District Court reversed the hearing examiner and concluded that the Declaratory Rulings’ interpretation of the 1993 Rule was incorrect, that the 1993 Rule was held invalid.
¶34 The controversy over exempt wells, the impacts on senior water users, and combined appropriations continues. The 64th Legislature again passed legislation to protect combined appropriations consistent with 1993 Rule. Legislation codifying the 1993 Rule and further defining what qualifies for the exemption passed through both chambers of the 65th Legislature, but was again vetoed by Governor Bullock. Given this procedural history and the complexity of crafting a solution, it would be inequitable to hold the DNRC responsible for not having been able to craft a rule when two legislatures, interim committees, and other stakeholders were also unable to do. The DNRC’s reliance on the hearing examiner’s Declaratory Ruling and subsequent efforts to conduct rulemaking, culminating in two proposed rules, cannot be characterized as defending or asserting claims in bad faith or which are frivolous. I would thus conclude that pursuant to the provisions of § 25-10-711, MCA, and the equitable considerations underlying the private attorney general doctrine, that it would be inequitable to award the Coalition attorneys’ fees.
¶35 The foregoing analysis is how I would resolve the issue of whether the Coalition is entitled to attorneys’ fees. I do not agree with the Court that resolution of the dispute should be on the basis of the first factor of the private attorney general doctrine; that is, that Clark Fork I did not involve a public policy of significant importance to Montanans which was void of any underlying constitutional considerations. We stated in Clark Fork I:
Based upon the plain language of the statute, it is evident that the intent of the Legislature in enacting subsection (3)(a)(iii) was to ensure that, when appropriating from the same source, only a de minimus quantity of water, determined by the Legislature to be 10 acre-feet per year, could be lawfully appropriated without going *218 through the rigors of the permitting process. An exception to the exemption for quantities exceeding 10 acre-feet per year, regardless of flow rate and number of wells or developed springs utilized for the appropriation, protects other water rights utilizing the same water source. This is consistent with the purpose of the Act as a remedial statute designed to strictly adhere to the prior appropriation doctrine and to provide for the “administration, control, and regulation of water rights ... and confirm all existing water rights....” Section 85-2-101(2), (4), MCA. We have explained that “the Water Use Act was designed to protect senior water rights holders from encroachment by junior appropriators adversely affecting those senior rights.” Mont. Power Co. v. Carey, 211 Mont. 91, 98, 685 P.2d 336, 340 (1984). This fundamental purpose is reflected throughout the Act and many of the subsections of the Act begin with a policy declaration stating that the protection of senior water rights and the prior appropriation doctrine is the Act’s core purpose. See, e.g., § 85-1-101(4), MCA (the Act’s purpose is to “protect existing uses”); § 85-2-101(4), MCA (it is “a purpose of this chapter to recognize and confirm all existing rights”); § 85-2-101(4), MCA (the purpose of permitting is to “provide enforceable legal protection for existing rights”). Accordingly, based upon the plain language of the statute and the stated purpose of the Act, we conclude that “combined appropriation” refers to the total amount or maximum quantity of water that may be appropriated without a permit and not to the manner in which wells or developed springs may be physically connected.
Clark Fork I, ¶ 24. In this respect, the District Court was correct in its conclusion that the Coalition’s challenge to the 1993 Rule was an important matter of public policy that vindicated constitutional interests.
¶36 We stated in BRPA III, that a case need not involve a constitutional claim in order to vindicate constitutional interests. BRPA III, ¶ 25. Cases involving statutory interpretation may nonetheless qualify for private attorney general fees when constitutional concerns are vindicated by statutory compliance. Here, our interpretation of the validity of the 1993 Rule was premised on the statute’s constitutional purpose and its impact on senior water rights. The rights the Montana Water Use Act are designed to protect are explicitly recognized in Article IX, Section 3(1), of the Montana Constitution. The procedural history of this case alone demonstrates that the litigation and legislative efforts revolved around substantial *219 policy issues and concerns over protecting the existing rights of senior water users. I, accordingly, do not agree with the Court that the Coalition did not litigate important policies grounded in the Montana Constitution and I would not decide this matter upon that basis.
¶37 Based on the foregoing analysis, I would conclude that § 25-10-711(l)(b), MCA, and equitable considerations of the private attorney general doctrine preclude an award of attorneys’ fees. To the extent the Court’s analysis differs, I specially concur.

 In Montrust, while recognizing the district court denied fees on the basis of § 25-10-711, MCA, we failed to reconcile § 25-10-711, MCA, with our newly adopted private attorney general doctrine. Thus, we granted attorney fees against an agency absent a showing of bad faith or frivolity. Although we have subsequently described Montrust as not a “garden variety” constitutional challenge to a legislative enactment, the tension between Montrust and § 25-10-711(l)(b), MCA, still remains. See W. Traditions P’ship, ¶ 19.